## Alfonso's Executors' Appeal.

70 347,
189 622

1. Executors of a decedent whose domicil was in Cuba have no authority under letters testamentary in Cuba to transfer stock in Pennsylvania.

2. The purpose of the Acts of March 15th 1832, ? 6, and March 29th 1832, ? 7, was to prevent the estates of non-residents from being withdrawn from our jurisdiction to the prejudice of those interested in the distribution.

3. Under the Act of June 16th 1836, ? 3, executors under authority of a foreign *country* cannot transfer stocks, &c.; those of a sister state may.

4. In many respects the sister states are not to·each other as foreign states.ᶜ

5. There is no distinction here between the powers of a foreign executor and an administrator.

January 8th and 9th 1872. Before Thompson, C. J., Agnew and Sharswood, JJ. Williams, J., at Nisi Prius.

Appeal from the decree at Nisi Prius : In Equity : No. 36, to January Term 1871.

The bill in this case was filed by Ricardo Alfonso and another, executors, &c., of Gonzalo Alfonso, deceased, against the Philadelphia and Reading Railroad Company.

The bill charged that the decedent had lately died in Havana in Cuba, having made a will, of which the plaintiffs were appointed executors, had proved the will, and been qualified as such; that at his death the decedent owned a number of shares of the capital stock of the Philadelphia and Reading Railroad Company; that the officers of the company had refused to allow them to transfer the stock, because they were foreign executors only, without authority, under the laws of Pennsylvania or any other of the United States, to administer the estate of the decedent in Pennsylvania ; the plaintiffs averred that notwithstanding that the allegations of the defendants were true, yet being fully qualified under the law of the testator's domicil to administer his estate, they could lawfully make the transfer of the stock.

They prayed for a decree directing the defendants to permit them to transfer the stock.

The judge at Nisi Prius dismissed the bill on the following opinion :—

" It was admitted by the able counsel of the plaintiffs, that if, before the Act of March 15th 1832, section 6, Pamph. L. 136, executors under probates in foreign countries could not intermeddle with the estate of their testator within this Commonwealth, or exercise the powers and authorities of an executor under letters granted within this state, the Act of June 16th 1836, section 3, Pamph. L. 683, does not confer upon them the authority to transfer shares of stock in any bank or other incorporated company. He admitted, also, that the case of Graeme *v.* Harris, 1 Dallas 465, was a determination by the Supreme Court in point, after full argument by very able counsel. This decision was affirmed in McCullough *v.* Young, 1 Binn. 63, in which it was said by the

court that the Act of Assembly of 1705, 1 Smith 33, 'has uniformly been considered not to extend further than to the provinces in this country at the time the act was passed; and Graeme *v.* Harris turned upon that ground.' I am asked to overrule these cases on account of the broad language of the Act of 1705, which, by special reference to probates of wills in England or elsewhere, appears expressly to negative the construction which would confine it to provinces in this country. A dictum of Chief Justice Gibson, in Willing *v.* Perot, 5 Rawle 265, in which he appears to assume that, before the Act of 1832, an action could be maintained on a foreign grant of administration, has also been cited. It is, however, merely a dictum. Whatever might be my opinion, were the point *res integra*, I do not think that, sitting in this place, I ought to overrule a decision of the Supreme Court."

The defendants appealed to the court in banc, and assigned the dismissal of their bill for error.

*G. M. Dallas*, for appellant, referred to Acts of 1705, sect. 1, 1 Sm. L. 33, June 16th 1836, sect. 3, Pamph. L. 683, 1 Br. Purd. 419, pl. 78, 420, pl. 80; Graeme *v.* Harris, 1 Dallas R. 456; McCullough *v.* Young; 1 Binn. 63; 2 Bl. Com. 503; 2 Kaim's Eq. B. 3, ch. 8, sect. 3, 4; Willing *v.* Perot, 5 Rawle 265; Lewis *v.* Stammers, 1 Dallas R. 2; Morris *v.* Vanderen, Id. 66.

*J. E. Gowen*, for appellees.

The opinion of the court was delivered, January 29th 1872, by
Agnew, J.—The single question in this case is, whether executors, under a will proved and letters testamentary granted in the city of Havana in the island of Cuba, have lawful power to transfer the stock of the railroad company. The 6th section of the Act of 15th March 1832 (Purd. 275, pl. 14), enacted that no letters testamentary, or of administration, granted out of this Commonwealth shall confer any of the powers and authorities possessed by an executor or administrator, under letters granted within this state. The 10th section of the same act provided that letters testamentary granted, without a bond taken, to any one not an inhabitant of the state, shall be void. Illustrative of the intention of these sections, we must also read the 7th section of the Act of 29th March 1832 (Purd. 278, pl. 36), enacting that no appointment of guardian made or granted out of the state, shall authorize the person so appointed to interfere with the estate or control the person of a minor in this state. These sections were intended to change the law in relation to foreign executors, administrators and guardians, and their evident purpose was to prevent the estates of decedent nonresidents from being withdrawn from our jurisdiction to the pre-

judice of domestic creditors, and others interested in their distribution. It is clear, therefore, that they repealed the Act of 1705 (Purd. 284, pl. 78), so far as it enabled executors and administrators acting under letters granted out of the province to exercise the same authorities, as if the probates and letters had been granted here. No distinction was made in the Act of 1832 between letters testamentary and of administration, and on the contrary, even letters granted here to a non-resident executor were made void unless he had qualified himself by giving a bond with sureties. These acts of 1832 have not been repealed, but yet stand as the evidence of the general policy of the state. They have been modified, however, as to the debts and public loans of the state, and as to the stocks of banks, and stocks and loans of incorporated companies in this state, by sundry laws, which enact that they shall not apply to these stocks and loans; but the same "shall pass and be transferable," and the "dividends and interest be receivable" in like manner in all respects, and under the same, and no other regulations, powers and authorities, "*as were used and practised before the said recited acts were passed.*" This language is marked and peculiar. Had the legislature intended to revive the Act of 1705 specifically as to these stocks and loans, and confer on *executors* the powers claimed in the argument, it would have been easy to say so directly. But it was known that the Act of 1705 had received a certain interpretation, and hence the expressions "used and practised before the said recited acts were passed." Now certainly the best evidence of this interpretation is that which is afforded by authoritative precedents, and these we find in the cases of Graeme *v.* Harris, 1 Dallas 456, and McCullough *v.* Young, 1 Binney 63. In the former it was held that letters of administration granted by the Archbishop of York, in England, were not sufficient authority to maintain an action in this state. In the latter it was said that the Act of 1705 has uniformly been construed to extend no farther than to the provinces in this country at the time the act was passed, and that Graeme *v.* Harris turned on this ground. It was therefore held that letters from a sister state were a sufficient authority. In this connection we are not to be unmindful of the influence which the separation of the colonies from the mother country had upon the minds of the judges, and the different relation in which the states stand to each other from that of foreign countries, especially after the adoption of the Federal Constitution. Under that constitution the states now lie within one general government, and are connected together by easy and speedy means of access. The citizens of each are secured in their rights by the Constitution, and by Federal laws administered by Federal courts. They are not as foreign states to each other in many respects, and the removal of property from one to another does not cause the same sacrifice of convenience

[Alfonso's Appeal.]

and oftentimes of rights, as it does into a foreign country, different in its language, institutions and laws.   There was great reason, therefore, for the distinction which was taken by this court in the two cases referred to.   Domestic creditors, legatees, or next of kin, should not be sent abroad in quest of property to answer their claims, when the decedent left property within the jurisdiction of the state, that can be applied to meet their demands.   There is no good reason, therefore, why the modification of the Act of 1832 should extend beyond the practice and usages of the state as determined by its judicial tribunals.   Nor is there any good reason to distinguish the case of an executor from that of an administrator.   The probate of the will can add nothing to his case.   The Act of 1832 does not affect the will or the rights which vest under it, but only its execution under the foreign letters.   Leaving all interests granted by the testator unaffected, it merely forbids the execution of the will by foreign hands in order to protect our own citizens.   .This protection is needed just as much under a will as when there is none.   When there is a will, a copy of it and of the probate may, under the 12th section of the Act of 1832, be brought here and registered, and letters granted even to the foreign executor, on his giving the proper bond.   There is, therefore, no hardship in following the ancient usage and practice, and confining the authority of letters granted out of the state to transfer these stocks and loans, and receive interest and dividends, to such as are granted within the. United States.   Upon the whole we discover no error in the decree, rendered at Nisi Prius on the demurrer, and it is therefore affirmed.